IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KENETTE SUTER
For herself and as Executrix of the Estate
Of Michael S. Suter
Virginia Beach, VA 23456

      Plaintiff,

v.

UNUM Life Insurance Company of America
2211 Congress Street
Portland, ME 04122

Serve: Registered Agent
      CT Corporation System
      4701 Cox Road - Suite 285
      Glen Allen, Virginia 23060-6802

And

International Preparedness Associates, Inc.
2610 Potters Road Ste 206
Virginia Beach, Va 23452

Serve: Registered Agent
VB BUSINESS SERVICES LLC
500 World Trade Center
Norfolk, VA 23510

And

Scott A Freeman
Warrenton, VA

      Defendant.

Civil Action No.: 1:16-cv-00208



**COMPLAINT FOR DECLARATORY JUDGMENT AND RELATED RELIEF**

COMES NOW, Kenette Suter, Plaintiff, by and through her counsel, Richard D Carter of RICHARD D CARTER PLLC, for her Complaint for Declaratory Judgment against UNUMProvident, International Preparedness, Inc. and Scott A. Freeman and states as follows:

## PARTIES

1. Plaintiff, Kenette Suter, is a resident of Virginia Beach, Virginia.

2. Defendant, UNUM Life Insurance Company of America ("UNUM") is a Delaware corporation doing business in Virginia.

3. Defendant International Preparedness Associates, Inc. is a Virginia Corporation doing business in this District.

4. Defendant Scott A. Freeman is a resident of Warrenton, VA within Fauquier County which is located in this District and Division.

## JURISDICTION AND VENUE

5. Jurisdiction is founded upon 28 U.S.C. § 1331 and the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. and without limitation, §1132(e). This Court also has jurisdiction pursuant to 28 U.S.C.§ 1332.

6. Venue is proper pursuant to 28 U.S.C. §1391(b) and (c) and 29 U.S.C. 1132 (e)(2). A copy of this Complaint will also be served upon the Secretary of Labor.

## FACTS

7. Michael S. Suter served in the United States Navy as a Naval Special Warfare Operator rising from the ranks of enlisted to his ultimate goal as a (SEAL) Chief Warrant Officer Four (CWO4) for 30 years. Mr. Suter was the first SEAL Warrant Officer to be commissioned and set the standards for all future SEAL Warrant Officers.

8. Michael S. Suter and Scott A. Freeman formed International Preparedness Associates Inc. in June 2007.

9. Mr. Suter was the President and CEO and majority shareholder. After Mr. Suter's cancer reoccurrence Diagnosis, Mr. Freeman began planning to take over the company and cut Mr. Suter out. He had previously reassured and promised Mr. Suter that Kenette Suter would "never have to worry about her job, ever," knowing that Mr. Suter would rely on that and acquiesce in Mr. Freeman's plan to take over control of the company. At the time of these promises, Mr. Freeman had no intention of keeping his word and knew them to be false.

10. Mr. Freeman devised a Plan to dilute and or eliminate Mr. Suter's holding with a sale of stock to a third party corporation. Mr. Suter ultimately declined to do so declaring that it was not a good value, especially for the Suters. Mr. Freeman blamed this on Kenette Suter and began to take actions to remove her from the Company, despite his promises.

11. Mr. Freeman continued to agitate with Mr. Suter for a stock transfer which would give Mr. Freeman control over the corporation and prior to Mr. Suter's death he signed an agreement to do so and was moved to the COO position. Mr. Suter sent a communication nullifying the transfer shortly thereafter. He remained active and engaged in the business until weeks prior to his death, never resigned or was terminated and was either the CEO or COO at the time of his death.

12. Mr. Suter was suffering with terminal cancer and began to feel the effects of the disease as his treatment wore on.

13. In April 2014 Mr. Suter became so ill that he could no longer come to the office although he did stay engaged from home via email until May 2014. After that he was too ill to come to the office.

14. Mr. Suter never resigned or was terminated from his company during his Medical Leave. He was still employed on the date of his death.

15. Mr. Suter died on July 18, 2014.

16. Mr. Suter received paychecks from International Preparedness Associates Inc. through June 15 and received K1 reports from the company throughout his life. As part of his continued employment International Preparedness Associates, Inc. paid his insurance premiums, including the UNUM premiums.

17. At the outset of his employment, Suter and Freeman enrolled in various benefit programs offered by the Company. These included a PPO medical insurance, dental insurance, life insurance, accidental death & dismemberment insurance, and long term disability insurance programs offered by IPA. The life, accidental death, and long term disability insurance coverages were part of the Group Insurance provided through policies issued by UNUM. These coverages were evidenced by a Certificate of Insurance for the Basic Term Life & Accidental Death and Dismemberment Insurance (the "Basic Life Insurance"), and a Certificate of Insurance for the Disability Income Insurance: Long Term Benefits coverage (the "Disability Insurance"). The Group Policy Number for these coverages was RO140020. Premium payments for this group insurance were paid by IPA as a part of Suter's compensation. See UNUM Plan Ex. A

18. As the disease progressed, his health deteriorated. He was no longer able to come to work at IPA. Suter took leave under the Family Medical Leave Act (FMLA) as provided for by Federal Law.

19. Shortly thereafter, on or about June 11, 2014, Suter requested materials to apply for the Accelerated Death Benefits allegedly available from UNUM.

20. Mr. Suter had been diagnosed with squamous cell carcinoma of the Larynx. Freeman, IPA, the Plan, and UNUM were at all times keenly aware of the terminal nature of this debilitating disease.

21. The Insurance Certificate outlined the terms and conditions upon which Life Insurance coverage would be provided, and when it would end. The Plan provides that the Participants would remain covered on Page 24 of the Plan which says:

"ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE NOT WORKING DUE TO INJURY OR SICKNESS?"

If you are not working due to injury or sickness, and if premium is paid, you may continue to be covered up to your retirement date."   See Exhibit A, UNUM Plan page 24.

22. The Plan also provided that Mr. Suter would be covered while he was ill.  The Plan states: "WHEN DOES YOUR COVERAGE END?

If you choose to cancel your coverage under the policy or a plan, your coverage ends on the first of the month following the date you provide notification to your Employer.

Otherwise, your coverage under the policy or a plan ends on the earliest of:

the date the policy or a plan is cancelled;

the date you no longer are in an eligible group;

the date your eligible group is no longer covered;

the last day of the period for which you made any required contributions; or

the last day you are in active employment **unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage.**" (emphasis added) Exhibit A, UNUM Plan page 25.

23. It is readily apparent that Michael Suter, with International Preparedness Associates fully intended to keep and maintain his Basic Life Insurance coverage with UNUM following the onset of his disability leave. This intent is in part reflected in email correspondence between IPA's benefits broker Kim Setzer and AJ DiNinno at Unum." Kenette Suter, wife of Mike Suter with International Preparedness Associates, group number R0140020 wishes pursue the accelerated benefit for her husband. Please let us know what documents are required to obtain this benefit. Thank you" See Exhibit B, email from Kim Seltzer

24. It is undisputed that premiums for Mr. Suter were paid past the date of his Death. See Exhibit C- Correspondence from UNUM refunding payments for Mr. Suter's premiums paid through September.

25. That insurance was with Unum.

26. This was a benefit of their employment.

27. The insurance plan was to pay off $250,000.00 in the event of the deaths of either Mr. Freeman or Mr. Suter.

28. The Unum policy also contained provisions for short-term disability (SDT) and long-term disability (LTD) insurance.

29. The policy contained provision on Page 5 that required the insurance plan to continue to cover employees who were too disabled from illnesses to continue active work.

30. Mr. Suter was one such employee.

31. In June 2014 Mr. Suter sought an application for the accelerated Death benefit pursuant to his Life Insurance and received the application from Unum however he died before he could apply for these benefits.

32. On June 11, 2014 Mr. Suter received information on benefits for an accelerated life benefit form.

33. His claims manager notified him on June 11. "I have attached a copy of The Owner's Life and ADMD Certificate booklet for your reference. Please note important information regarding accelerated benefit on Page 16 and Pages 26 to 27 of the booklet. The employee is eligible to elect up to 100 percent of his in-force life insurance amount up to a maximum of $250,000.00." See Ex. B email to Mr. Suter.

34. On July 18, 2014 Mr. Suter died as a result of his illness.

35. This was a month from his last paycheck received from IPA.

36. Because Mr. Suter had passed away from the illness which initially disabled him he was fully entitled to receive the benefit of this life insurance however those benefits were wrongfully withheld by Unum and IPA.

37. On September 11, 2014, UNUM denied the application of Kenette Suter for the Life Insurance Proceeds for Michael S. Suter's fully paid up Life Insurance under the IPA, Inc. Plan. The letter did not contain the required specificity for a denial letter pursuant to Department of Labor Claims Regulations 29 CFR § 2560.503.1 making only a vague allegation that Mr. Suter was not actively at work at the time of his death. It did not reference the Plan documents or facts in any way which would make it possible for a Full and Fair review pursuant to 29 U.S.C. § 1133. See Ex. D UNUM First Denial

38. On December 9, 2015, Ms. Suter's prior counsel appealed UNUM's decision. See Ex E, Gregory Giordano letter.

39. UNUM denied the Appeal claiming for the first time that Mr. Suter's employment was terminated. See Ex F, Unum letter of January 30, 2015.

40. Upon receipt of UNUM's denial with the new reason, Mr. Giordano immediately sent UNUM a Second Appeal, pointing out the misinterpretation of UNUM's own policy and citing the policy provision "if you are not working due to injury or sickness and if the premium is paid, you may continue to be covered up to your retirement date. Again, Mr. Suter never retired nor was he terminated." See Ex G, Giordano letter of February 4, 2015

39. UNUM refused to reopen Mr. Suter's claim and its denial decision of January 30, 2015 stands as a final decision.

40. Ms. Suter has exhausted her administrative remedies.

41. Subsequent to Mr. Suter's illness, his friend and cofounder of IPA, Scott A. Freeman began a scheme to actively keep Ms. Suter from accessing her husband's rightful share of IPA. Mr. Freeman was aware of the financial bind Mr. Suter's death had left the family with and realized that Ms. Suter might well attempt to be entitled to a larger share of proceeds for her business which passed to her after Mr. Suter's death. Motivated by spite and ill will towards Kenette Suter who Freeman blamed for Michael Suter's refusal to sell his shares in IPA just prior to his death at a reduced value, Freeman decided on this course of fraudulent conduct.

42. Freeman began an active campaign to collude with UNUM to keep Kenette Suter away from the proceeds of the IPA Life Insurance Plan. He misrepresented details of Mr. Suter's employment status at the time of his death and slurred Ms. Suter saying to various claims people at UNUM that she was a "strange person" and a "lunatic." He said that Mr. Suter was no longer employed by IPA at the time of his death despite the fact that IPA continued to pay benefits on behalf of Mr. Suter, accrue earnings to Mr. Suter and had never terminated him nor accepted any letter of resignation. See Exhibit H – Adjusters notes.

43. Mr. Freeman was at all time acting as an ERISA fiduciary pursuant to 29 USC 1002 as he purported to be the Plan Sponsor, made discretionary decisions on behalf of the Plan and communicated to UNUM and Ms. Suter on behalf of the Plan.

44. As a fiduciary, Mr. Freeman owed an absolute duty of loyalty to Participants and Beneficiaries of the Plan. By virtue of his employment, Mr. Suter was a Participant and Ms. Suter was a Plan Beneficiary. At the time of the conversation with UNUM, knew that IPA had never terminated the services of Mr. Suter. He made these statements with the knowledge that the statement was false and untrue and he made these statements to cause UNUM to deny the payment of death benefits to the Plaintiff. He knew that UNUM would rely on these false statements as a reason not to pay By virtue of his knowing misrepresentations, Mr. Freeman breached that Fiduciary duty.

45. Defendant IPA has condoned and ratified all conduct by the Defendant Freeman.

46. By virtue of the foregoing allegations, there exists an actual controversy and denial of right with regard to Ms. Suter's entitlement to life Insurance benefits, and Ms. Suter hereby invokes the jurisdiction of this court to declare the right of Ms. Suter to life Insurance benefits under the Plan, and to decree specific enforcement of these rights and related relief in implementation of the terms of the Plan.

## <u>COUNT I</u>
### *(Failure to provide benefits under ERISA)*

47. Ms. Suter realleges and incorporates by reference paragraphs 1 through and including 46 above.

48. The Life Insurance coverage provided to Mr. Suter was part of an "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(1) in that the IPA Plan established and maintained for the purpose of providing its participants or their beneficiaries Life Insurance through the purchase of insurance.

49. Mr. Suter was a "plan participant" of the employee welfare benefit Plan established and maintained within the meaning of 29 U.S.C. § 1002 (7), in that he was or reasonably expected to become eligible to receive Life Insurance from the IPA Inc. Plan.

50. Ms. Suter was a "beneficiary" of the employee welfare benefit Plan established and maintained within the meaning of 29 U.S.C. § 1002 (7), in that she was or reasonably expected

to become eligible to receive Life Insurance benefits from the IPA Inc. Plan from the participation of her husband.

51. UNUM is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21).

52. Scott A. Freeman is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21).

53. IPA, Inc. is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21).

54. Ms. Suter is a beneficiary of the Life Insurance Benefits due to the death of Michael S. Suter as defined by the Plan and is entitled to benefits under the terms of the Plan, and any amendments and/or modification(s) thereof.

55. Ms. Suter complied with all terms and requirements of the Plan in requesting Life Insurance for her husband's death and providing UNUM with information documenting his death.

56. UNUM violated the requirements of ERISA, 29 U.S.C. §1132(a)(1)(B) by failing to provide benefits under the Plan for which Ms. Suter was eligible despite her request for benefits.

57. Because the Policy and Plan documents applicable to Ms. Suter do not contain a reservation of discretion to UNUM to adjudicate this claim, this case should be reviewed *de novo*.

58. Even if the deferential standard of review did apply in this matter, the denial of benefits by UNUM was and is arbitrary, capricious and not made in good faith, unsupported by substantial evidence, an abuse of discretion, erroneous as a matter of law and in violation of ERISA.

59. As a direct and proximate result of the actions of UNUM, Ms. Suter has not been paid benefits of $250,000.00.

60. As a direct and proximate result of the actions of UNUM, Ms. Suter has been caused to incur attorney's fees in an attempt to secure payment of Life Insurance justly due to her.

## COUNT II
*(ERISA violation - no full and fair review)*

61. Ms. Suter realleges and incorporates by reference paragraphs 1 through and including 60 above.

62. The Life Insurance provided by the Plan to its employees is part of an "employee welfare benefit plan" ("Plan") within the meaning of 29 U.S.C. §1002(1) in that the Plan was established and maintained for the purpose of providing its participants or their beneficiaries Life Insurance through the purchase of insurance.

63. UNUM is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21) in that it exercises discretion with respect to decisions regarding benefits and administers the Plan.

64. IPA, Inc. is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21) in that it exercises discretion with respect to decisions regarding benefits and administers the Plan.

65. Scott A. Freeman is a fiduciary with respect to the IPA Inc. Plan within the meaning of 29 U.S.C. §1002(21) in that he exercises discretion with respect to decisions, voluntarily communicated about the Plan and was responsible for administering the Plan regarding benefits.

66. Mr. Suter was at all relevant times, a plan participant of the employee welfare benefit Plan established and maintained by IPA Inc. Plan within the meaning of 29 U.S.C. §1002(7), in that Mr. Suter was eligible to receive benefits from the employee benefit Plan.

67. Ms. Suter was at all relevant times, a plan beneficiary of the employee welfare benefit Plan established and maintained by IPA Inc. Plan within the meaning of 29 U.S.C. §1002(8), in that Ms. Suter was eligible to receive benefits from the employee benefit Plan.

68. Mr. Suter was a covered Plan Participant at the time of his death on July 18, 2014

69. Ms. Suter is the designated Plan Beneficiary and is entitled to benefits under the physical terms of the Plan and any modifications thereof.

70. UNUM violated ERISA by failing to provide the full and fair review required by 29 U.S.C. § 1133. UNUM failed to fully consider all of the evidence submitted.

71. UNUM's paper only file review of the relied on biased and self-serving statements of Scott Freeman and IPA, Inc. without any individual verification of the facts. UNUM also failed to inform Ms. Suter of her rights under the Plan and what would be reasonably necessary to conduct a full and fair review. Therefore, UNUM made it impossible for Ms. Suter to address the issues raised by Freeman, IPA and UNUM or for her to rebut Freeman and IPA's self-serving opinions and therefore impossible for her to perfect her claim.

72. As detailed above in the "Facts" section, after her appeal was denied, Ms. Suter requested that the claim be re-opened so that she could address UNUM's report and submitted evidence to UNUM rebutting the erroneous information. UNUM refused to re-open this claim and refused to review the evidence and argument submitted by Ms. Suter after September 11, 2014.

## COUNT III
### CLAIM FOR EQUITABLE RELIEF

73. Ms. Suter realleges and incorporates by reference paragraphs 1 through and including 72 above.

74. Congress designed ERISA to promote the interests of employees and their beneficiaries in employee benefit plans. Plan fiduciaries are obligated to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.

75. The ERISA fiduciary duty includes the common law duty of loyalty which requires the fiduciaries to deal fairly and honestly with beneficiaries. It also imposes an affirmative duty on the fiduciaries to convey complete, thorough, and accurate information that is material to a beneficiary's claim and circumstance.

76. This obligation on fiduciaries includes an obligation to reasonably explain to plan participants and beneficiaries the material terms and conditions of the relevant plan documents and provide them with adequate notice of what they need to do in order to continue the basic life insurance coverage.

77. IPA, Inc. was the Plan Sponsor and Plan Administrator. Scott A. Freeman communicated directly and voluntarily to UNUM on behalf of the Plan thereby assuming Fiduciary status. UNUM was the Claims Administrator for the Plan and was responsible for the payment of benefits. All three were fiduciaries obligated to act in accordance with the terms of the Plan and in a manner consistent with their fiduciary obligation to Michael S. Suter as a Plan participant and Kenette Suter, a Plan beneficiary. Michael S. Suter relied on these defendants to honor his wishes to maintain his life insurance coverage, act prudently in doing so, and give him honest and accurate information material to keeping this coverage as he coped with a terminal illness. IPA, Freeman and UNUM failed in this regard and breached their fiduciary obligations to the Suters.

78. Denial of Suter's life insurance claim was in defiance of his expressed desire and resulted in harm to Suter. Their respective breaches resulted in the loss of the life insurance benefits provided under the Plan.

79. At the time Michael and Kenette Suter filed for Life Insurance benefits he was not told, on information and belief, there was no automatic waiver of premiums for the life insurance coverage upon his disability. Nor was it explained that he would be entitled to the continuation of his life insurance under the "WHEN DOES YOUR COVERAGE END? provision of the Basic Life coverage since he did qualify for this coverage.

80. Upon making it known to IPA, Freeman and UNUM his interest in continuing his life insurance coverage at or near the time of his disability from his terminal disease, no effort was made to provide Suter with a copy of the Plan or Certificate or a Summary Plan Description (SPD) from which he could review his various options.

81. UNUM's breach of its fiduciary duty was even more apparent in the letter of September 11, 2014. It was inaccurate, misleading and a misrepresentation of the facts. UNUM advised Ms. Suter that since Mr. Suter was terminated that there was no Insurance. This was not true. However, its own investigators knew that Mr. Suter remained an owner through a telephone conference with Brittany Berry of IPA. See Exhibit H Adjuster's notes. Not only is the fiduciary obligated to convey accurate material information, it also has an affirmative obligation to correct a participant's incorrect information or misunderstanding of the terms of the Plan or coverage options.

82. IPA, Inc. paid several months of premiums on Michael's Suter's group life coverage, consistent with his continued ownership and employment.

83. Michael Suter was never terminated as an employee of IPA, Inc. and so was eligible for coverage until his death.

84. On July 18, 2014 Michael Suter died. The claim for the basic life insurance benefits by his designated beneficiary, Kenette Suter, was denied. No life insurance benefits were paid because of these and other breaches of the fiduciary obligations of UNUM, Freeman and IPA, Inc.

85. Kenette Suter thus seeks appropriate equitable relief from the fiduciary breaches of UNUM, Freeman and IPA, Inc.

86. This relief includes, but is not limited to (1) an equitable surcharge for unjust enrichment to recover the benefits withheld and to make the ERISA beneficiary whole, (2) reformation of the Plan to the extent needed to equitably address and pay her claim, and (3) waiver or equitable estoppel preventing UNUM, Freeman and IPA, Inc. from relying on the medical leave as grounds for denying her claim. Suter seeks any other equitable relief the Court deems necessary and proper to protect her from a loss from such violations, all pursuant to 29 U.S.C.§1132(a)(3).

### REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

87. Ms. Suter realleges and incorporates by reference paragraphs 1 through and including 86 above.

88. Kenette Suter requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Virginia Code 8.01- 382, or on principles of equity.

89. Unum's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 8.01-382of the Virginia Code. Kenette Suter thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with the Virginia Code.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Ms. Suter, demands the following relief against UNUM:

A. A declaration that UNUM, Freeman and IPA, Inc. is obligated to provide Ms. Suter with Life Insurance benefits;

B. That Ms. Suter be awarded Life Insurance benefits as provided under the UNUM policy; plus, pre-judgment interest from the denial date of September 11, 2014, to the present;

C. A declaration that UNUM, Freeman and IPA, Inc., jointly and severally, are obligated to provide Ms. Suter with amount equal to the Life Insurance proceeds and interest;

D. That Ms. Suter be awarded reasonable attorneys' fees in addition to litigation expenses and costs; and

E. Such other and further relief as this Court deems just and appropriate.

Respectfully submitted,
Ms. Kenette Suter

By: /s/ *[signature]*

Richard D. Carter
Attorney for Plaintiff Kenette Suter
RICHARD D. CARTER PLLC
1765 Duke Street
Alexandria, VA 22314
Telephone: 703-549-0076
Facsimile: 703-542-1273
rcarter@richcarterlaw.com

16