IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| KENETTE SUTER, <br><br> *Plaintiff,* <br><br> v. <br><br> UNUM LIFE INSURANCE COMPANY OF AMERICA, <br><br> *Defendant.* | Civil No. 1:16-cv-208 |

## Memorandum Opinion

This matter comes before the court on Plaintiff Kenette Suter's plea for declaratory judgment against UNUM Life Insurance Company of America ("UNUM") under the Employee Retirement Income Security Act of 1974 ("ERISA") seeking life insurance benefits due to her, as beneficiary under the terms of her husband Michael Suter's employee benefit plan. Plaintiff alleges that Defendant failed to provide benefits under ERISA, failed to conduct a full and fair review under ERISA, and breached its fiduciary duty. The parties cross-moved for summary judgment. For the reasons discussed below, Defendant's Motion for Summary Judgment, Dkt. No. 17, is DENIED and Plaintiff's cross-Motion for Summary Judgment, Dkt. No. 20, is GRANTED. The matter is remanded to the Plan Administrator for a review consistent with this memorandum opinion.

### I. Background

The following factual background, policy information, and procedural history are taken from the claim folder associated with the ERISA review process. As discussed in Part II,

Plaintiff disputes some of these factual representations but the claim folder remains the bedrock of the Court's analysis in this case. *See Williams v. Metro Life Ins. Co.*, 609 F.3d 622, 631 (4th Cir. 2010).

### A. Factual Background

Michael Suter was the majority shareholder, president, and CEO of International Preparedness Associates, Inc. ("IPA"). Mr. Suter formed IPA with Scott Freeman in June 2007. Plaintiff also worked at IPA, where she was responsible for payroll. IPA sponsored a group employee benefit plan that included the life insurance policy at issue in this case, with an effective date of coverage of October 1, 2009. As of October 1, 2013, Mr. Suter had $250,000 of life insurance coverage. Sometime after obtaining coverage, Mr. Suter contracted laryngeal cancer. By April 2014, Mr. Suter's illness prevented him from coming into the office. Mr. Suter attempted, and did continue, to work from home via email until May 2014. On May 6, 2014, Mr. Suter and Mr. Freeman emailed one another about a potential sale of IPA. There is no record of any work-related emails from Mr. Suter after that date. Pursuant to an agreement with Mr. Freeman, Mr. Suter continued to collect his normal paycheck until June 1, 2014. Plaintiff also issued a paycheck to Mr. Suter for June 1-15, 2014.

Around the same time that Mr. Suter received his final paycheck from IPA, Plaintiff inquired with the IPA insurance broker about accelerating death benefits under Mr. Suter's life insurance policy. The broker contacted Defendant on June 11, 2014, and Defendant sent the documents required to accelerate benefits to the broker and to Plaintiff that day. In the same correspondence, Defendant also advised that Mr. Suter had not yet filed for short or long-term disability benefits. Defendant provided the application paperwork for these benefits along with

the accelerated benefit paperwork. Defendant has no record of a request by Plaintiff or Mr. Suter to accelerate benefits or apply for short or long term disability.

Mr. Suter passed away on July 18, 2014. Plaintiff filed a claim for benefits with Defendant sometime shortly thereafter.

## A. The Policy

IPA maintains an employee benefit plan through Defendant that sponsors a life insurance policy, policy number R0140020 ("the Policy"), for its employees. In general, the Policy provides for life insurance benefits in the event that an employee passes away while covered by the Policy.

The Policy defines the terms necessary for its life insurance benefits determinations. The Policy states that coverage "ends on the earliest of: ... [t]he date you no longer are in an eligible group; ... [t]he last day you are in active employment unless continued due to a covered layoff or leave of absence or due to an injury or sickness, as described in this certificate of coverage."[1] The Policy defined "eligible group" as "[o]wners in active employment in the United States with the Employer" subject to a minimum hours requirement of 40 hours a week to maintain coverage. The policy also provides an exception to active employment for employees who are "not working due to sickness or injury" whereby an employee can maintain coverage until their retirement date so long as premiums are paid for the duration.

The Policy also allows an employee to carry on their benefits by converting them to an individual life insurance policy after employment terminated. To do so, the employee is required to apply for the coverage and pay the first premium within 31 days of termination. The Policy also allowed for coverage to continue in the event of disability claims by policy holders less than

---

[1] The Policy provides for a number of other events which lead to the cessation of coverage. Those events are not germane to this case.

60 years of age. Finally, the Policy allowed for the acceleration of death benefits for terminally ill patients where: (a) an election for such benefit was made "in writing, on a form acceptable to UNUM," (b) the participant was terminally ill; (c) a physician certification of life expectancy less than twelve months; and (d) UNUM approved the certification. The employee and the employer are each required to complete separate sections of the accelerated benefit claim form in order for UNUM to process the claim. The policy defines terminal illness as one which reduces life expectancy to less than 12 months.

Defendant is responsible for administering the plan and making any benefits determinations under the plan. The Policy explicitly disclaims an agency relationship between the participant and the Defendant, by and through the employer.

### B. Administrative History

After receiving notice of Mr. Suter's passing, Defendant submitted a claim to IPA seeking information necessary to assess the benefits claim. IPA's finance director, Brittany Berry, completed the claim form on August 26, 2014. Ms. Berry stated on the form that Mr. Suter's employment had "terminated" on June 15, 2014 and that Mr. Suter's last day physically present in the office was April 28, 2014. In response to the question: "was this employee terminated", Ms. Berry responded "Yes."

Defendant also called Ms. Berry on September 3, 2014 to confirm the information provided on the claim form. Ms. Berry directed Defendant to speak with Mr. Freeman who confirmed that Mr. Suter was terminated on June 1, 2014 but paid until June 15, 2014. Mr. Freeman also emailed Defendant two days later to explain that he and Mr. Suter were co-owners of IPA and recounted that Mr. Suter had become too ill to work in the office in April 2014, continued to correspond via email until sometime in May 2014, and that it was agreed that he

would receive a salary until June 1, 2014; though Mr. Freeman acknowledged that a final paycheck was actually issued on June 15, 2014. This email exchange with Defendant led to a second phone call the same day whereupon Mr. Freeman clarified that Mr. Suter was not fired, and therefore he did not prefer to describe him as "terminated" but that he had ceased to be an employee as of June 1, 2014.

As part of the diligence process, Defendant also reviewed its own records to confirm that Mr. Suter had not sought short or long term disability benefits and had not attempted to convert his group policy to individual coverage. There is no evidence in the record that Defendant followed up with Plaintiff or IPA regarding the acceleration of benefits claim form which was sent to Plaintiff, upon her request, on June 11, 2014. Defendant also discovered that premiums on the policy had been paid through August 1, 2014. Upon discovering this, Defendant credited IPA's bill for all premiums paid on Mr. Suter's behalf after June 1, 2014.

On the basis of the foregoing diligence, Defendant determined that Mr. Suter was no longer an employee of IPA at the time of his death and was therefore not covered by the Policy. Defendant issued a denial of benefits letter and summary of findings to Plaintiff on September 11, 2014.

Plaintiff, through counsel, appealed Defendant's decision on December 9, 2014. Plaintiff argued on appeal that Mr. Suter's employment had not ended on June 1, 2014 because Mr. Freeman did not tell Defendant that Mr. Suter's employment had ended. Plaintiff offered as evidence a May 6, 2014 email exchange between Mr. Freeman and Mr. Suter regarding the sale of IPA. Plaintiff also contended that Mr. Suter was still the owner of IPA at the time of his death. Defendant upheld its denial on January 30, 2015. In the denial on appeal, Defendant

noted that the additional evidence did not establish that Mr. Suter remained employed by the company beyond June 1, 2014.

Plaintiff's then counsel contacted Defendant via telephone on February 4, 2015, and by letter on February 9, 2015, disputing the findings on appeal. Plaintiff requested a copy of Defendant's claim file. The present lawsuit followed. The parties have since filed cross-motions for summary judgment.

## II. Legal Standard

### A. Standard of Review of Plan Administrator Decision

When reviewing a plan administrator's decision to deny benefits in the ERISA context pursuant to 29 U.S.C. § 1132(a)(1)(B), courts must first look to the policy's language to decide whether the administrator has been granted discretion to determine benefit eligibility under the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 268 (4th Cir. 2002). Where the plan confers discretionary authority on the plan administrator, courts apply an abuse of discretion standard to evaluate the eligibility determination. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). The abuse of discretion standard in this context means the administrator's decision must "result from a 'deliberate, principled reasoning process' and be supported by substantial evidence." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 630 (4th Cir. 2010). The review should "show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008).

The Fourth Circuit has set forth eight factors to guide the application of this standard:

(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to

which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000).

If a court believes that an administrator lacked adequate evidence in making its determination, the appropriate remedy is to remand the case to the administrator. *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985). As a general matter, the decision to remand "should be used sparingly." *Id.* at 1008 (internal citations and quotations omitted). Remand is "most appropriate whe[n] the plan itself commits the trustees to consider relevant information which they failed to consider or whe[n] the decision involves records that were readily available." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir.1999).

### B. Admissibility of Evidence Outside of the Record

Plaintiff filed a supporting affidavit with the Complaint that supplements and alters the narrative surrounding the denial of Mr. Suter's benefits. Plaintiff asks the Court to review its motion for summary judgment under Federal Rule of Civil Procedure 52 to account for the additional facts, or in the alternative to consider the facts as part of a Rule 56 motion. Defendant argues that Rule 56 applies to the cross-motions and Plaintiff's affidavit should not be considered by the Court.

Plaintiff contends that sister Courts of Appeals and a court in this district have previously sanctioned a review pursuant to Rule 52. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998); *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 7 (1st Cir. 1985); *Neumann v. Prudential Ins. Co. of Am.*, 367 F. Supp. 2d 969, 974 (E.D.

Va. 2005). However, the case at bar fundamentally differs from the cases cited by Plaintiff because Defendant's actions, as the plan administrator who also had discretionary authority to determine benefits, are subject to an abuse of discretion standard. *See Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522–23 (4th Cir.2000) (abuse of discretion review warranted only when plan "vest[s] in its administrators discretion either to settle disputed eligibility questions or construe doubtful provisions of the Plan."). In *Wilkins*, the Sixth Circuit found that "a district court should not adjudicate an ERISA action as if it were conducting a standard bench trial under Rule 52. Such a proceeding would inevitably lead to the introduction of testimonial and/or other evidence that the administrator had no opportunity to consider." *Wilkins*, 150 F.3d at 618. To the extent the *Wilkins* court called into question the applicability of Rule 56, the court in *Neumann* held that "[t]he Sixth Circuit's resolution of the matter does not quite fit within existing Fourth Circuit precedent." *Neumann*, 367 F. Supp. 2d at 979. *Boston Five Cents* is not an ERISA action at all. *See Boston Five Cent Sav. Bank*, 768 F.2d at 11. Accordingly, the Motions are governed by Rule 56.

Nevertheless, under the abuse of discretion standard, the Fourth Circuit has held that "a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton v. AT&T Inc.*, 709 F.3d 343, 356 (4th Cir. 2013). Other circuits have expanded this to include facts or evidence about which that the plan administrator "knew or should have known." *Id.* at 353. Accordingly, outside evidence will be considered as permitted under Fourth Circuit precedent.

### III. Discussion

Plaintiff contends that Defendant violated 29 U.S.C. § 1132(a)(1)(B) of ERISA because its decision to deny benefits was not supported by the evidence (Count I) and it failed to conduct a full and fair review of Plaintiff's benefit claim on behalf of Mr. Suter (Count II). Plaintiff also alleges that Defendant breached its fiduciary duty to Mr. Suter in violation of 29 U.S.C. § 1132(a)(3) of ERISA (Count III). The Court considers each of these counts in turn.

#### A. Lack of Evidentiary Support (Count I)

Plaintiff contends that Defendant's denial of benefits was not supported by reasonable evidence. Specifically, Plaintiff objects to a number of the factual findings in the administrative record and believes that Defendant knew or should have known certain material facts at the time it denied Plaintiff's benefit claim which would have justified a decision in Plaintiff's favor. Specifically, Defendant knew or should have known that Plaintiff would have to coordinate with IPA to file the accelerated benefit claim form that her husband requested on June 11, 2014 before UNUM could process it. Defendant knew that the form would require IPA assistance, but despite repeated communications with IPA, never inquired about the status of the acceleration form. For this reason, Defendant's ERISA record was deficient.

As noted above, "[a] district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." *Helton v. AT&T Inc.*, 709 F.3d at 356. Plaintiff's allegations that Defendant knew Mr. Suter was still employed by IPA at the time of his passing and that Mr. Suter had applied for acceleration of his death benefits bears on the third *Booth* factor: "the adequacy of the materials considered to make the decision and the degree to which

they support it." *Booth v*, 201 F.3d at 342. The documents "known to the administrator" may include evidence that the administrator should have known of, such as a beneficiary's employment contract or plan documents even if they are not part of the administrative record. *Helton*, 709 F.3d at 353 (citing *Hess v. Hartford Life Acc. Ins. Co.*, 274 F.3d 456, 462–63 (7th Cir.2001); *Brooking v. Hartford Life and Acc. Ins. Co.*, 167 Fed.Appx. 544, 547 n. 4 (6th Cir.2006)).

Plaintiff proffers the following evidence which she believes the Defendant knew or should have known at the time benefits were denied but which was not included in the claim file or factored into the denial decision. First, Plaintiff states that there was nothing in the claim file to reflect Defendant inquiring into the IPA Employee Handbook or IPA medical leave policies. Second, Plaintiff states that Defendant spoke with Plaintiff's counsel on February 4, 2015 and counsel refuted the notion that Mr. Suter was terminated from his employment at IPA. Plaintiff complains that there is no record of this phone call in the claim file and therefore there is no proof that Defendant considered this assertion when reviewing the benefits request and appeal. Third, Plaintiff states that Defendant had notice of Plaintiff's illness, and its terminal nature, as of Plaintiff's June 11, 2014 call to learn about the process for accelerating death benefits and request the necessary acceleration form. Plaintiff avers that she submitted the application to accelerate benefits to IPA because the claim form required certain sections to be completed by IPA.

Neither the first nor the second fact advances the matter in Plaintiff's favor. Plaintiff invites the inference that the handbook and medical leave policies would have put Defendant on notice that Mr. Suter had taken a temporary leave from his position at IPA. But Plaintiff's argument presupposes that Mr. Suter availed himself of any medical leave to which he was

entitled. Numerous other pieces of evidence contradict this conclusion. On the June 11, 2014 call, Defendant advised Plaintiff that Mr. Suter had not yet requested short or long-term disability benefits, to which he would have been entitled if on medical leave. Further, IPA repeatedly informed Defendant that Mr. Suter was not employed at the company after June 1, 2014. The parties disagree as to whether the appropriate term for Mr. Suter's status was "terminated", and reasonable minds might differ—though the term was not used in the formal denial of benefits. But neither IPA nor Plaintiff indicated to Defendant that Mr. Suter was on disability prior to the denial of benefits. The correspondence between Plaintiff and Defendant on February 4, 2015 is similarly inconsequential. Notwithstanding the self-serving characterization of this correspondence, it cannot bear on the original decision or the review on appeal because the call happened after the original benefits determination on December 9, 2014 and the appeal decision on January 30, 2015.

However, the third fact, that Defendant was on notice as to the terminal nature of Plaintiff's illness and should have followed up on the benefit acceleration paperwork in subsequent conversations with IPA, is consequential. Defendant knew that the acceleration form could not be completed by the Plaintiff without contribution from the employer, IPA. *See* Dkt. No. 16 at 146 (June 11, 2014 e-mail from "Ask Unum" to Kim Setzer and Andrew Schlueter, carbon copying Kenette Suter, and stating that "I have attached the requested Accelerated Life Benefit Claim form. *Once the Employee, Employer, and Attending Physician sections* have been completed, please fax...") (emphasis added). If, as Plaintiff contends, she submitted the accelerated benefit form to IPA for it to complete, then she substantially complied with her obligations to achieve accelerated benefits. The fact that employees at IPA failed to complete the form and submit it to the Defendant does not preclude Plaintiff from recovering.

*See Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 568 (4th Cir. 1994) (granting relief to the beneficiary where the decedent's employer failed to complete its portion of requisite benefit forms).

Defendant's failure to follow up on the accelerated benefits form is also not excusable. In *Wilkinson v. Sun Life & Health Ins. Co.*, the court was called upon to determine whether an omitted FMLA leave document should be considered as part of the administrative record in an ERISA action. 127 F. Supp. 3d 545, 560 (W.D.N.C. 2015), *aff'd*, No. 15-2105, 2017 WL 56721 (4th Cir. Jan. 5, 2017). Though the case was subject to an abuse of discretion standard, the court nevertheless held that the FMLA form was admissible. *Id.* at 561. The court found that even though the record was not necessarily inadequate, the FMLA form was highly probative of the disputed issue and memorialized the date when the employee made the employer aware of the intention to take FMLA leave. *Id.* at 561. The form was also admissible because it was relevant to the evaluation of the *Booth* factors and there was "record evidence that Sun Life was aware of Wilkinson's FMLA leave and had at least constructive notice of the FMLA paperwork." *Id.* The court further noted that:

> [W]hether Sun Life ever had actual possession of the FMLA form, or whether Sun Life acted purposefully or with an improper motive in not ensuring that the FMLA form became a part of the administrative record…is less than transparent. However, including the form in this court's evaluation promotes a reasoned and fair evaluation of the claims so it will be considered.

*Id.* at 561-62.

Similarly, in this case, Defendant concluded that "neither Mr. Suter nor Plaintiff submitted the required election form" but failed to make a record of any attempts to obtain this highly probative form. Dkt. No. 18, at 7 ¶ 5. Defendant knew that the form had to be completed, at least in part, by IPA. Defendant communicated with IPA at least four more times after

12

sending the forms to Mr. Suter following the June 11, 2014 call. Though the record is in most respects adequate and shows that Defendant followed up on whether Mr. Suter had sought short or long term disability or had converted his group policy to individual coverage, there is no record that Defendant ever inquired with IPA respecting its receipt of an accelerated benefits form. Thus, as in *Wilkinson*, it is unclear whether IPA or Defendant had actual or constructive possession of the accelerated benefit form—but it is easy enough for the parties to determine this on remand. It is clear that the accelerated benefits form is highly probative of whether Plaintiff is entitled to the insurance proceeds and that the form could properly be considered by the Court as relevant to the *Booth* factors. For these reasons Defendant failed to develop a sufficient evidentiary record because it did not investigate whether IPA received the accelerated benefits form from Plaintiff.

### B. "Full and Fair" ERISA Review (Count II)

Having found that Defendant's denial of benefits was based on an incomplete record, the Court must decide whether the ERISA Review was nevertheless "full and fair". Because the incompleteness in the record was caused by Defendant's failure to inquire with the employer despite knowing that employer involvement was required for any benefit acceleration, Defendant's review was necessarily not "full and fair".

Defendant's implementation of the ERISA requirements was facially satisfactory. "ERISA imposes on trustees a number of procedural requirements relevant to the denial of claims." *Harrison v. Wells Fargo Bank, N.A.*, 773 F.3d 15, 21 (4th Cir. 2014) "For example, section 1133 requires plan administrators, where any claim for benefits under the plan is denied, to set forth the specific reasons for such denial." *Id.*; *see also* 29 U.S.C. § 1133(1). ERISA also requires that the administrator provide claimants with a "reasonable opportunity ... for a full and

fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). This review includes the right to appeal the adverse benefits determination and to submit written comments or records. *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 232 (4th Cir. 2008).

Defendant's denial notice, sent on September 11, 2014, set forth the specific reasons for the denial. In relevant part it advised Plaintiff that "[i]nformation provided by International Preparedness Associates, Inc. indicates that your husband was no longer employed as of June 1, 2014." On this basis, Mr. Suter was no longer in the eligible group for his employer plan and his coverage lapsed. The denial notice also advised that Mr. Suter's life premiums could not be waived because he did not meet the age requirement set forth in the Policy for premium waivers.

Plaintiff exercised her right to appeal the denial of benefits and availed herself of the opportunity to submit additional evidence. In support of her appeal, Plaintiff submitted one email exchange from May 6, 2014, where Mr. Freeman and Mr. Suter discussed a plan to sell the company. Plaintiff also submitted comments challenging the finding that Mr. Suter was no longer employed after June 1, 2014. Specifically, Plaintiff argued that Mr. Suter was still part-owner of IPA at the time of his death and was accumulating ownership earnings up to his passing.

Defendant specifically addressed these additional claims in the denial of the appeal, stating that:

> We have reviewed the email correspondence you included between Mr. Freeman and Mr. Suter dated May 6, 2014. The email does not establish that Mr. Suter was actively working at the time; rather, it appears to be a conversation about selling the company. The email does not establish Mr. Suter remained employed by the company beyond June 1, 2014.

The denial of appeal also set forth a detailed accounting of the dates and substance of correspondence with Mr. Freeman and other employees at IPA who explained that Mr. Suter was not terminated to the extent that the word implies that he was fired but that he had unequivocally ceased active employment at IPA in June. On the strength of these conversations, and the lack of any contrary evidence in the email correspondence submitted by the Plaintiff, IPA upheld its denial.

Despite the fact that the Defendant complied with the denial letter and appeal requirements, its underlying decision was not based on a full and fair review. This case presents the unique circumstances where a plan administrator instructs the employee to complete materials which require employer participation but the plan administrator, despite numerous opportunities, never raises the issue with the employer. This unfortunate result is exacerbated by the ease of avoidance. Defendant had numerous exchanges with IPA after providing the forms to Plaintiff but never made a record of whether the form was completed—despite following up on other issues which were discussed on the June 11, 2014 call.

For these reasons, Defendant's review was not full and fair.

### C. Breach of Fiduciary Duty (Count III)

Finally, Plaintiff argues that Defendant breached its fiduciary duty to Plaintiff by failing to properly investigate her claim, failing to explain the remedies that might be available to Plaintiff, and "failing to adequately explain what was the problem." However, this count is little more than an inappropriate repackaging of Counts I and II. The Fourth Circuit rejects such a practice.

Section 1132(a)(3) of ERISA provides that, "A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). But the use of equitable relief is limited to cases where other adequate relief is not available. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"); *see also Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006) ("the Supreme Court held that § 1132(a)(3) authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme.").

This case resembles both *Korotynska* and *Batten v. Aetna Life Ins. Co.*, 2016 WL 4435681, at *4 (E.D. Va. Aug. 17, 2016) where courts dismissed fiduciary duty claims as duplicative of denial of benefit claims. In *Korotynska*, the court found "no question that Korotynska's injury is redressable elsewhere in ERISA's scheme. Plaintiff complains that MetLife's allegedly improper claims procedures injured her by leading to the denial of benefits to which she was rightly entitled. Another provision of ERISA [§ 1132(a)(1)(B)] squarely addresses plaintiff's injury[.]" *Korotynska*, 474 F.3d at 106. In *Batten*, a court in this district found that the plaintiff's "§ 502(a)(3) claim is barred under *Varity* because § 502(a)(1)(B) provides adequate relief for her injury under the circumstances and her request for equitable relief is merely a request for benefits recast from her § 502(a)(1)(B) claim." *Batten*, 2016 WL 4435681, at *4. Similarly, Plaintiff has recast her claim for benefits and her challenge to the

16

adequacy of the review process as a breach of fiduciary duty. Count III is not comparable to the special circumstances which have justified finding that a plan administrator breached its fiduciary duty. *See, e.g., Varity*, 516 U.S. at 503-506 (misrepresentations by plan administrator during a presentation to employees about the continuation of benefits).

Plaintiff also contends that Defendant breached its fiduciary duty by failing to notify Plaintiff of the availability of her options during what was, undoubtedly a trying emotional period in Plaintiff's life. *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001) ("a fiduciary is at times obligated to affirmatively provide information to the beneficiary."). More specifically, "an ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent—especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions." *Griggs*, 237 F.3d at 381. But by this standard, Defendant met its obligation. Defendant did not create a misunderstanding about the terms of the Policy benefits. The dispute between the parties turns on whether or not Mr. Suter was "terminated." And when Defendant spoke with Plaintiff about her rights under the Policy, it went above and beyond its responsibility to explain how to file for an acceleration of death benefits by observing that Mr. Suter had not yet asked for short or long term disability but may be entitled to do so. His eligibility for disability, as with the accelerated benefits, would depend on information which was not, and perhaps could not be, provided simply over the course of the phone call.

Plaintiff also encourages the Court to consider Defendant's "checkered history of denying claims improperly" in considering whether it improperly withheld benefits in this case. The Court may consider this factor when weighing the effect of the conflict of interest in the plan

17

administrator's actions. In this respect, Defendant does indeed have a less than favorable reputation. *See McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir. 2008) (documenting cases of UNUM's bad faith, erroneous benefit denials, and unscrupulous tactics).

But evidence of prior bad acts only acts as a "tiebreaker when the other factors are closely balanced." *Metropolitan Life Ins. Co.*, 554 U.S. at 115. In this case, Defendant acted largely in conformity with its duties as the plan administrator and in some cases went above and beyond—inquiring with Mr. Suter about his eligibility for additional benefits during the June 11, 2014 call. Accordingly, no great weight can be given to the Defendant's conduct with respect to past beneficiaries in deciding this case. Nevertheless, for the reasons discussed above, Defendant's specific failure to investigate the accelerated benefits form is fatal to the benefits determination.

On remand, Defendant should investigate whether it received Mr. Suter's accelerated benefits form. Defendant should further investigate whether it requested the accelerated benefits form from IPA at any point after the June 11, 2014 call. Finally, Defendant should investigate whether the accelerated benefits form was ever submitted to IPA.

## IV. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment, Dkt. No. 17, is GRANTED and Defendant's cross-Motion for Summary Judgment, Dkt. No. 20, is DENIED. The matter is remanded to the Plan Administrator for a review consistent with this opinion.

February 7, 2017
Alexandria, VA

/s/
Liam O'Grady
United States District Judge